UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT CHARLES JORDAN, JR., | ) | CV F   99-5093 REC SMS P |
| Plaintiff, | ) | |
| v. | ) | FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 94) |
| GREENAN, et. al., | ) | |
| Defendants. | ) | |

Robert Charles Jordan ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**A.   RELEVANT PROCEDURAL HISTORY**

This action is proceeding on Plaintiff's Amended Complaint filed on March 17, 1999. Pursuant to an Order issued April 7, 1999, the Court determined that the Complaint state cognizable claims for relief and ordered service on the Defendants. Defendants filed a pre-answer Motion for Summary Judgment on October 18, 1999. Plaintiff opposed the Motion on November 15, 1999. The Court issued Findings and Recommendations that the Motion be denied for Defendant's failure to meet their burden on February 25, 2000. The District Court adopted the Findings and Recommendations on May 8, 2000.

Defendants filed an Answer on July 20, 2000.  On March 20, 2002, the Court issued a Scheduling Order setting forth deadlines for discovery and the filing of dispositive motions.  On November 18, 2002, Defendants filed a Motion to Dismiss the action on exhaustion grounds.  The Court issued Findings and Recommendations on March 20, 2003, that the Motion be granted in part and denied in part.  The District Court adopted the Findings and Recommendations on August 25, 2003, and granted the Motion to Dismiss with respect to Plaintiff's claim that Defendant Goertzen retaliated against him for filing inmate grievances by issuing him a Rules Violation Report.

On September 18, 2003, Defendants filed a second Motion to Dismiss on exhaustion grounds due to a change in the law.  The Court recommended that the Motion be denied on May 28, 2004.  The District Court adopted the Findings and Recommendations on July 30, 2004.  On August 12, 2004, the Court reset the discovery and dispostive motion deadlines.

Defendants filed the instant Motion for Summary judgment on February 15, 2005.  Plaintiff filed his Opposition on May 4, 2005.  A reply to the Opposition was filed by Defendants on May 16, 2005.

**C. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must

be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

**C.  UNDISPUTED FACTS**[1]

1. Plaintiff is a state prisoner serving a sentence for a state court conviction occurring in 1997.
2. Defendants Greenan and Goertzen were employed by the California Department of Corrections ("CDC") and stationed at California Correctional Institution ("CCI") in 1997-1998.
3. A CDC form 812, Notice of Critical Case Information was prepared on October 25, 1998, and appeared to indicate that Plaintiff was associated with the Black Guerilla Family ("BGF") and Crips gangs.[2]
4. On February 5, 1998, Defendant Greenan completed a Request for Correspondence Approval form authorizing Jordan to correspond with an inmate at Pelican Bay State Prison.
5. Defendant Greenan's practice was to review Plaintiff's central file to determine whether he had any gang affiliations prior to completing the Request for Correspondence Approval form.
6. Defendant Greenan's would have relied on the information contained in the

---

[1] The following facts are undisputed for the purpose of this Motion.

[2] Although Plaintiff disputes that he was ever affiliated with these gangs, Plaintiff does not dispute that the document actually exists. Thus, that the document was prepared on October 25, 2998, is undisputed.

4

|   |     |     |
|---|-----|-----|
| 1 |     | October 25, 1993, CDC form 812 Notice of Critical Case Information in order to |
| 2 |     | fill out the Request for Correspondence Approval form. |
| 3 | 7.  | Defendant Greenan made the notation regarding Plaintiff's alleged affiliation |
| 4 |     | based on the information contained in the October 25, 1993 CDC form 812. |
| 5 | 8.  | The notation regarding Plaintiff's alleged affiliation with the BGF gang was |
| 6 |     | removed from his central file records on April 7, 1998. |
| 7 | 9.  | Plaintiff has never been threatened or assaulted by any gang members due to the |
| 8 |     | notation contained on the February 5, 1998, Request for Correspondence |
| 9 |     | Approval form. |
| 10 | 10. | Plaintiff did not feel the need to be placed in protective custody after he learned of |
| 11 |     | the notation on the February 5, 1998, Request for Correspondence Form. |
| 12 | 11. | Defendant Goertzen was reassigned from his job as Plaintiff's work supervisor on |
| 13 |     | September 7, 1998. |
| 14 | 12. | Plaintiff continued to work as a janitor/porter in Unit Five until his housing |
| 15 |     | assignment was changed in 1999. |

**D. ANALYSIS**

   *1. Summary of Complaint*

   ***Defendant Greenan***

The Amended Complaint alleges that in November 1997, Defendant Greenan was assigned as Plaintiff's Correctional Counselor and that, as such, Defendant Greenan was responsible for issuance of free envelopes and postage to Plaintiff given his indigent status. Plaintiff claims that, beginning in December 1997, Defendant Greenan began to "overlook" Plaintiff's formal requests for envelopes and postage. Plaintiff states that on December 22, 1997, he finally complained to Defendant Greenan's immediate supervisor who then ordered the Defendant to provide the requested materials to Plaintiff.

Plaintiff states that he submitted another formal request for envelopes and postage to Defendant Greenan in January 1998, but Defendant refused to provide them to him. Further, on January 26, 1998, Plaintiff submitted a formal grievance concerning this situation to Defendant

1   Greenan's immediate supervisor but never received any response or postage or envelopes for the
2   month of January 1998.
3         On February 5, 1998, Defendant Greenan began processing Plaintiff's request to be
4   permitted to communicate with an inmate housed at a different institution.  Plaintiff states that in
5   completing the paperwork regarding the communication request, Defendant Greenan deliberately
6   placed false information identifying him as being affiliated with the Black Guerilla Family and
7   Crip gangs.  Plaintiff states that Defendant referenced an affiliation with the gang in retaliation
8   for Plaintiff's having filed grievances against her.  Following the indication of gang affiliation,
9   Plaintiff filed an inmate grievance against Defendant Greenan.  Plaintiff's grievance at the
10  informal level was bypassed and granted at the first formal level.  The reference to Plaintiff's
11  alleged gang affiliation was redacted in April 1998.
12        ***Defendant Goertzen***
13        Plaintiff states that on July 15, 1998, he was assigned the job duty of "Third Watch
14  Janitor" and that this assignment gave him Saturday and Sunday off.  Plaintiff alleges that on
15  July 17, 1998, Defendant Goertzen "changed" his job assignment in order to accommodate
16  another inmates job request.  Plaintiff indicates that he submitted an inmate grievance the
17  following day concerning the change.  During the informal level interview with Defendant
18  Goertzen, Plaintiff alleges Defendant Goertzen " . . .took great personal exception . . ." to the
19  charges and threatened that Plaintiff would be fired from his job.
20        On July 20, 1998, Plaintiff submitted a separate inmate grievance concerning Defendant
21  Goertzen's threat.  Plaintiff also wrote to the Warden and Director of the California Department
22  of Corrections but received no response.  The inmate grievance was eventually denied.
23        ***2. Claims for Relief***
24        An allegation of retaliation against a prisoner's First Amendment right to file a prison
25  grievance is sufficient to support claim under Section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288
26  (9th Cir.2003).  "Within the prison context, a viable claim of First Amendment retaliation entails
27  five basic elements:  (1) An assertion that a state actor took some adverse action against an
28  inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The court must " 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995) (*quoting* Sandin v. Conner, 515 U.S. 472, 482, 115 S.Ct. 2293  (1995)).

### *Defendant Greenan*

Plaintiff asserts that Defendant Greenan deliberately made a reference to Plaintiff's being a gang member in a request for communication with another inmate in retaliation for Plaintiff's filing a grievance against her.

Defendants provide the Court with evidence that in completing the Request for Correspondence Approval , Defendant Greenan would be required to review Plaintiff's central file to determine whether he had any gang affiliations.  (Greenan Decl. at ¶ 4.)   Defendants also provide evidence that in a document titled "Notice of Critical Case Information - Safety of Persons" dated October 25, 1993, and contained in Plaintiff's central file, there was a reference to the gangs Crips and BGF ("Black Guerilla Family").  (Exh. B, Greenan Decl.)   The evidence provided by Defendants shows that in determining whether to approve the request, Defendant Greenan would have relied on information contained in Plaintiff's central file, including those notations in the Notice of Critical Case Information - Safety of Persons for Plaintiff.  (Greenan Decl. at 2.)  In addition, Defendant's evidence shows clearly that the inmate seeking to correspond with Plaintiff was a member of the BGF.  (Exh. A, Greenan Decl.)

The Court finds that Defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in

the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

In his Opposition, Plaintiff disputes the contents of the information contained in the "Notice of Critical Information" but not the fact that the form with the notation exists. Plaintiff points out that the notation regarding the Crips and BGF is contained in the section identified as "Nonconfidential Enemies" and thus, Defendant Greenan's reliance on this information was incorrect. However, Plaintiff provides no evidence to support his assertion that the reference to Plaintiff's gang affiliation was made in retaliation for his exercise of his first amendment rights. As noted above, Plaintiff must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Here, other than his assertion that the reference was made in retaliation, Plaintiff presents no evidence.

According to the evidence before the Court, Defendant Greenan was required to review Plaintiff's central file to determine whether communication with a known gang member could be approved. Defendants also produce evidence of a reference to the Crips and BGF gangs in Plaintiff's central file. While Plaintiff adamantly disputes that he is a gang member, it is undisputed that Defendant Greenan would have relied on or relied on the information contained in Plaintiff's central file when approving the communication request. Thus, Plaintiff fails to present evidence that Defendant Greenan's conduct was retaliatory.

Even assuming that the timing of the events was sufficient to find the reference was in retaliation for Plaintiff's prior grievances, Plaintiff fails to present any evidence that his First Amendment rights were chilled as a result of the reference to gang affiliation. Plaintiff concedes in his Opposition and Deposition that he was not physically injured because the reference was removed from the document "solely because his administrative appeal of the placing of the false information was granted." (Opposition at 4-5; Plaintiff's Deposition at 58:9.) Plaintiff argues that the law states that the "injury suffered" is the "chilling effect on the prisoner's First Amendment Rights" (Opposition at 4); however, he does not present any evidence to show how his First Amendment Rights were "chilled." The Opposition consists entirely of Plaintiff's

8

denials of membership in a gang and argument that Defendant's actions were "unreasonable." However, as noted above, in order to overcome summary judgment, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence demonstrating a disputed issue of fact exists warranting trial. In this case, Plaintiff has failed to meet his burden. Accordingly, the Court will recommend that Summary Judgment be GRANTED with respect to the First Amendment allegations against Defendant Greenan.

### *Defendant Goertzen*

Plaintiff next alleges that Defendant Goertzen changed Plaintiff's job assignment in order to accommodate another inmate's job request. Plaintiff then filed an administrative grievance concerning the change. During the informal level interview with Defendant Goertzen, Plaintiff alleges Defendant Goertzen " . . .took great personal exception . . ." to the charges and threatened that Plaintiff would be fired from his job. Plaintiff alleges that this "threat" was in retaliation for Plaintiff's having filed an administrative grievance.

Defendants argue that threats alone, absent a chilling effect on the his First Amendment rights, do not state a retaliation cause of action. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987.) In addition, Plaintiff's bare allegations of retaliation will not avoid summary judgment. Rizzo v. Dawson, 778 F.2d 527. Finally, Defendants contend that Plaintiff suffered no harm as he was not removed from job. (Motion at 5-6.)

Plaintiff argues that Defendant Goertzen submitted a request that Plaintiff's job assignment be changed. However, the allegations in the Complaint are that Plaintiff was threatened that he be "fired" from his job. It is undisputed that Plaintiff was never removed from his job assignment or fired as a result of Defendant Goertzen's alleged threat. Thus, Plaintiff has failed to demonstrate a constitutional harm that occurred as result of the threat. See, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.1987) (*per curiam*) (mere threat does not constitute constitutional wrong, nor do allegations that naked threat was for purpose of denying access to courts compel contrary result).

In addition, Plaintiff makes only a conclusory statement that his First Amendment rights were chilled but presents no evidence to support his contention. Finally, verbal harassment or

abuse does not rise to the level of a constitutional deprivation. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir.1987).  Accordingly, the Court finds Plaintiff's allegation does not amount to a cognizable Section 1983 claim and the Court will recommend that the Motion for Summary Judgment against Defendant Goertzen be granted.

E.  CONCLUSION AND RECOMMENDATION

The Court RECOMMENDS that the Motion for Summary Judgment be GRANTED and the action DISMISSED.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within FIFTEEN (15) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 12, 2005**             /s/ Sandra M. Snyder
icido3                                     UNITED STATES MAGISTRATE JUDGE